DYKEMA GOSSETT LLP
Jon D. Cantor (SBN: 91852)
*jdcantor@dykema.com*
Abirami Gnanadesigan (SBN: 263375)
*agnanadesigan@dykema.com*
333 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850Suite 2100
Los Angeles, California 90071

Attorneys for Plaintiff
ITG BRANDS. LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ITG BRANDS, LLC,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>CAPNA INTELLECTUAL<br><br>　　　　Defendant. | Case No. 2:21-CV-00818-ODW-PVC<br><br>**PLAINTIFF ITG BRANDS, LLC's OPPOSITION TO MOTION TO DISMISS**<br><br>**DATE:**　　　　**May 17, 2021**<br>**TIME:**　　　　**1:30 p.m.**<br>**COURTROOM:**　**5D**<br><br>Complaint Filed:　January 28, 2021 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................5

II. RELEVANT FACTS ..............................................................................................5

    A. ITGB'S Famous KOOL Marks..................................................................5

    B. Defendant's Diluting Bloom Marks...........................................................8

    C. Defendant's Failure to Adequately Meet and Confer in Advance of Filing this Motion ...............................................................................8

III. LEGAL STANDARD .............................................................................................9

IV. ITGB ADEQUATELY ALLEGES A CLAIM FOR FEDERAL TRADEMARK DILUTION ..................................................................................10

    A. ITGB Sufficiently Alleges the Fame of the Interlocking "OO"s .........10

    B. Third Party Usage of "Interlocking Rings" Is Irrelevant......................13

    C. ITGB Has Sufficiently Pled that the KOOL Marks are Likely to be Diluted by the Bloom Marks..............................................................14

V. CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Adobe Sys. v. Blue Source Grp. Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 10

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999) ......................................................................... 12, 13

*Blue Sphere, Inc. v. Swift*,
   No. SACV 14-00782-CJC(DFMx), 2014 U.S. Dist. LEXIS 194937
   (C.D. Cal. Sept. 17, 2014) ................................................................................... 11

*Color Me Mine Enters., Inc. v. Southern States Marketing Inc.*
   2012 U.S. Dist. LEXIS 196472, at *2 (C.D. Cal. May 18, 2012) ....................... 13

*Cree, Inc. v. Fastbuy, Inc.*,
   No. CV 18-01802-CJC(ASx), 2018 U.S. Dist. LEXIS 222531 (C.D.
   Cal. July 16, 2018) .............................................................................................. 11

*CYBERsitter, LLC v. Google Inc.*,
   905 F.Supp.2d 1080 (C.D. Cal. 2012) ................................................................. 10

*Global Apogee v. Sugarfina Inc*
   2018 U.S. Dist. LEXIS 175420, at *9 (C.D. Cal. Oct. 10, 2018) ........................ 13

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................. 11

*Jada Toys, Inc. v. Mattel, Inc.*
   518 F.3d 628 (9th Cir. 2007) ........................................................................... 5, 10

*Klarfeld v. United States*,
   944 F.2d 583 (9th Cir. 1991) ............................................................................... 10

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
   633 F.3d 1158 (9th Cir. 2011) ............................................................................. 14

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
   170 F.Supp.3d 1249 (C.D. Cal. 2016) ................................................................... 9

*Lorillard Tobacco Co. v. California Imports, LLC*,
 886 F.Supp.2d 529 (E.D Va. 2012) .................................................................. 12

*Metal Jeans, Inc. v. Affliction Holdings, LLC*,
 No. CV 15-0743 PA (Ex), 2015 U.S. Dist. LEXIS 80710 (C.D. Cal. June 19, 2015) .................................................................................................. 10

*MGA Entm't, Inc. v. Dynacraft BSC, Inc.*,
 No. 2:17-cv-08222-ODW-KS, 2018 WL 2448123 ............................................ 13

*Nissan Motor Co. v. Nissan Computer Corp.*
 378 F.3d 1002, 1015 (9th Cir. 2004) ................................................................ 13

**Federal Statutes**

15 U.S.C. § 1125(c)(2)(A) .......................................................................................... 11

Lanham Act ................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................................................. 9

Local Rule 7-3 .............................................................................................................. 8

Rule 8(a) ....................................................................................................................... 9

Rule 12(b)(6) ................................................................................................................ 9

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## I. INTRODUCTION

On March 30, 2021 ITGB filed a 105-page First Amended Complaint ("FAC") setting forth detailed and specific facts substantiating its claim for, *inter alia*, trademark dilution. Specifically, using several graphic and product examples, ITGB alleges that (1) the KOOL Marks including the iconic "OO"s are famous and distinctive; (2) Defendant is using nearly identical and infringing Bloom Marks in commerce; (3) Defendant's use began long after the KOOL Marks became famous; and (4) Defendant's use of the mark is likely to cause dilution. *Jada Toys, Inc. v. Mattel, Inc.* 518 F.3d 628, 634 (9th Cir. 2007).

Ignoring the clear sufficiency of ITGB's pleading, Defendant improperly argues against the <u>merits</u> of the dilution claim by claiming: (1) the interlocking "OO"s on their own are not sufficiently famous; (2) the KOOL Marks and Bloom Marks are too dissimilar; and (3) there are third-parties that use "interlocking rings" that are more famous than KOOL. These arguments conveniently disregard the allegations in the FAC, have no merit, and are premature. Defendant's Motion to Dismiss ITGB's dilution claim is simply a misplaced motion for Summary Judgment, and several of the supporting cases cited in the Motion are summary judgment decisions. ITGB's dilution claim should not be dismissed at this stage in the litigation, and any determination regarding ITGB's dilution claim can only be made after the opportunity for discovery, fact investigation, and a full hearing with all relevant evidence before the Court.

## II. RELEVANT FACTS

### A. ITGB'S Famous KOOL Marks

ITGB is the third largest tobacco company in the United States and offers a broad portfolio of some of the most famous and well-known cigarette, cigar and e-vapor brands. This portfolio of iconic brands includes, *inter alia,* WINSTON and SALEM cigarettes, DUTCH MASTERS cigars, BLU electronic cigarettes, and KOOL cigarettes. (FAC, ¶8). KOOL was launched in 1933, and was the first

menthol brand to gain nationwide distribution. ITGB and its predecessors have invested substantial time, effort and money in advertising and generating awareness of the KOOL brand in the United States. ITGB's predecessors established and ITGB has maintained a strong reputation among adult smokers for quality and consistency in its products, and ITGB continually seeks to ensure customer satisfaction and the integrity of its business. As a result of ITGB's excellent reputation and its investment in its brands, KOOL remains one of the world's most famous and valuable brands of menthol cigarettes and is currently ranking fourth in the highly competitive United States market for adult smokers. (FAC, ¶9).

KOOL is distinctive among menthol cigarettes because it delivers an intense menthol smoking experience that is bold, yet smooth. KOOL achieves the perfect balance of rich tobaccos with the fresh flavor of menthol. The fusion of tobacco and menthol is symbolized by the iconic interlocking "OO"s in the Kool logo ⓞⓞ and ⓘ, which are used presently in a manner similar to their historical use with packaging and advertising. (FAC, ¶10; Exhibit 1).

As shown below, and as alleged in Paragraph 13 of the FAC, the iconic interlocking "OO"s are used as part of the larger KOOL brand name, and are also used as a prominent standalone element on the side of KOOL packaging.



Additional examples of historical packaging, point-of-sale materials, advertising materials, emails, and direct mail for ITGB's KOOL cigarettes, which include an emphasis on the interlocking "OO"s within the KOOL logo and alone,

are depicted in paragraphs 11 and 12 of the FAC and are attached to the FAC as Exhibit 1.

From 2015 when ITGB acquired the KOOL Marks through the present, ITGB has sold over *1 billion packs* of KOOL cigarettes. Sales have steadily increased from 2015 through the present. (FAC, ¶14). From 2015 through the present, ITGB has spent several million dollars per year advertising the KOOL Marks. (FAC, ¶15).

ITGB owns incontestable federal registrations of the mark KOOL and solid and outlined versions of the interlocking "OO"s in the Kool logo on the Principal Register of the United States Patent and Trademark Office.  These include Registration Nos. 508,538, 747,482, 2,218,589, 2,578,658, and 2,617,994 of the marks KOOL (stylized), KOOL (word mark), KOOL (logo) and solid and outlined versions of the Interlocking "OO"s in the Kool logo, each for cigarettes, the particulars of which are set forth in Paragraph 16 of the FAC. The registrations issued April 12, 1949, April 2, 1963, January 19, 1999, June 11, 2002, and September 10, 2002, respectively. (FAC, ¶¶16-17).True and correct copies of the certificates of these registrations, including the title history showing ITGB as owner of these registrations, are attached to the FAC as Exhibit 2.

In prior infringement actions concerning the KOOL Marks, Courts have already determined that "[a]s a result of more than eight decades of continuous use and promotion of the KOOL Marks…[the] KOOL Marks have acquired a high degree of recognition, and distinctiveness throughout the United States as symbols of quality tobacco products" and that "[t]he KOOL trademarks are famous trademarks that are widely recognized by the general public." A true and correct copy of the Order of Final Judgment and Permanent Injunction in *Reynolds Innovations Inc. v. E-Cig Company, et al.*, Civil Action No. 1:14-cv-395 adjudicated in the United States District Court for the Middle District of North Carolina is attached to the FAC as Exhibit 8. See also, *ITG Brands, LLC v. Innovative Sourcing, Inc.*, Civil Action No. 1:20-cv-03152-SMJ, adjudicated in the United States District

Court for the Eastern District of Washington ("[d]ue to their notoriety, quality and length of commercial use, the ITGB MARKS [KOOL] are distinctive and have achieved famous status."). (FAC, ¶83). A copy of the Injunction in this civil action is attached to the FAC as Exhibit 9.

### B. Defendant's Diluting Bloom Marks

Defendant, without ITGB's authorization, and in a transparent rip-off of ITGB's KOOL Marks, advertises, promotes, distributes, imports, sells and/or offers for sale consumer packaged cannabis goods under the infringing marks BLOOM and ⊙ ("Bloom Marks"). (FAC, ¶ 24; *see also* Examples in ¶ 26). Defendant's Bloom Marks sometimes appear in black and red and often appear in solid colors. *Id.*

There is no FDA evaluation of the manufacturing process of cannabis products, no federal regulations governing the harmful and toxic pesticides in cannabis production, and Defendant has failed to enact adequate quality control standards with regard to its products. (FAC, ¶¶ 30-32). For example, in July 2018, Defendant recalled a number of its products because they were found to contain the pesticide Myclobutanil and thus did not comply with the California Bureau of Cannabis Control (BCC) standards. The application of Myclobutanil to marijuana can result in serious health consequences. Myclobutanil is a dangerous fungicide, and when it is heated past its boiling point, it releases highly toxic gasses. Upon information and belief, Defendant's recall was the first cannabis product recall in California's regulated marijuana market. The recall covered close to one hundred retailers across California. (FAC, ¶ 32). A true copy of Defendant's recall notice to the general public is attached to the FAC as Exhibit 3.

### C. Defendant's Failure to Adequately Meet and Confer in Advance of Filing this Motion

Pursuant to Local Rule 7-3, counsel for ITGB and Defendant had a telephone conference on April 5, 2021. During that call, Defendant's counsel stated their intention to move to dismiss ITGB's claim for dilution based on the argument that

8
ITG BRANDS LLC'S OPPOSITION TO MOTION TO DISMISS

the interlocking "OO"s were not used as a standalone element by ITGB, and therefore were not sufficiently famous to state a claim for dilution. During the meet and confer conference, ITGB's counsel alerted Defendant's counsel to the examples of ITGB's standalone use of the "OO"s alleged as in the FAC ( in paragraph 13 and Exhibit 1 to the FAC), and offered to provide additional examples in an attempt to resolve the issue short of motion practice. On April 7, 2021, ITGB's counsel provided Defendant's counsel with several more examples of ITGB and its predecessors' use of the "OO" mark, alone and as part of the KOOL Marks. ITGB's counsel also provided examples of ITGB's current use of the "OO"s on the product packaging for KOOL cigarettes and on various marketing initiatives. A true and correct copy of ITGB's counsel's correspondence is attached to the Gnanadesigan Declaration as Exhibit A.

Contrary to this Court's requirement that "[c]ounsel should discuss the issues to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court," Counsel for Defendants never responded and instead filed this Motion to Dismiss. Even more troubling, and despite ITGB's good faith efforts to meet and confer, in footnote 5 of the Motion Defendant misrepresents and downplays the nature of the extensive examples provided by ITGB. Throughout the Motion to Dismiss Defendant attempts to persuade the Court that ITGB does not use the "OO"s on their own as a brand indicator, when the record demonstrates that ITGB clearly does.

## III. LEGAL STANDARD

A complaint need only make a "short and plain" statement of the claim showing that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint in light of Rule 8(a). *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F.Supp.3d 1249, 1256 (C.D. Cal. 2016). In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in

favor of the non-moving party. *Klarfeld v. United States*, 944 F.2d 583, 585 (9th Cir. 1991). The standard for a motion to dismiss is not whether the plaintiff will ultimately prevail on the claims asserted, but rather whether the plaintiff has alleged sufficient factual grounds to provide notice of the claims and a plausible basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Metal Jeans, Inc. v. Affliction Holdings, LLC*, No. CV 15-0743 PA (Ex), 2015 U.S. Dist. LEXIS 80710, at *12 (C.D. Cal. June 19, 2015) (question presented by motion to dismiss is not if a plaintiff will prevail in the action, but whether it is entitled to offer evidence in support of its claim). Here, Defendant's entire argument is improper because it is predicated not on what ITGB has pled in its First Amended Complaint, but rather on the merits of ITGB's dilution claim.

Even if this Court believes ITGB's dilution claim is insufficiently pleaded, the Ninth Circuit has held that the court should grant leave to amend. *CYBERsitter, LLC v. Google Inc.*, 905 F.Supp.2d 1080, 1086 (C.D. Cal. 2012) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

## IV. ITGB ADEQUATELY ALLEGES A CLAIM FOR FEDERAL TRADEMARK DILUTION

### A. ITGB Sufficiently Alleges the Fame of the Interlocking "OO"s

In order to plead a claim for trademark dilution, the plaintiff must plead factual allegations showing that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). At this stage in the proceedings, ITGB is not required to prove the merits of its dilution claim; it is simply required to allege facts sufficient to state each of the legal elements of its claims.

Central to its claim for dilution are ITGB's allegations concerning the fame of the KOOL Marks, and specifically the interlocking "OO"s as standalone elements.

Indeed, fame is the only dilution factor that Defendant's Motion seriously challenges. The Lanham Act identifies four non-exclusive factors to consider in determining whether a mark is famous for purposes of dilution: (i) duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties, (ii) amount, volume, and geographic extent of sales of goods or services offered under the mark, (iii) extent of actual recognition of the mark, and (iv) whether the mark was registered. 15 U.S.C. § 1125(c)(2)(A). In order to plead fame, ITGB must simply allege facts to support a plausible theory regarding the notoriety of the interlocking "OO"s. *See In re Gilead Scis. Secs. Litig.,* 536 F.3d 1049, 1057 (9th Cir. 2008); *Blue Sphere, Inc. v. Swift,* No. SACV 14-00782-CJC(DFMx), 2014 U.S. Dist. LEXIS 194937, at *5 (C.D. Cal. Sept. 17, 2014) (denying motion to dismiss based on plaintiff's allegations that "Lucky 13 has marketed and sold its goods internationally, generating millions of dollars per year in sales and building significant consumer goodwill"); *Cree, Inc. v. Fastbuy, Inc.,* No. CV 18-01802-CJC(ASx), 2018 U.S. Dist. LEXIS 222531, at *13-14 (C.D. Cal. July 16, 2018) (denying motion based on allegations that plaintiff is "a market leader in the world of LED products" and that defendant's intentional copying confirms the CREE and XM-L marks are "famous and distinctive"). As set forth below, ITGB's FAC clearly alleges each of the elements of fame in detail:

**Dilution Factor 1 - Scope of Use.** ITGB and its predecessors have continuously used the KOOL Marks since 1933. All KOOL packaging materials bear the KOOL Marks, including the iconic interlocking "OO"s. The interlocking "OO"s not only appear within the brand name KOOL; they also consistently appear as standalone elements in the KOOL packaging, printed vertically along the right-hand side of each pack. (FAC, ¶13). The KOOL Marks are displayed on the KOOL website at www.kool.com, at thousands of authorized retail outlets, on legally permitted marketing and advertising materials to adult consumers, on direct mail and email communication with adult consumers, and even as an important

component of the popular KOOL jazz festival established in 1954. (FAC, ¶¶11-12, Exhibit 1). Since the brand's inception almost 90 years ago, and as permitted by law, ITGB and its predecessors have invested a substantial sum to advertise and promote KOOL products to adult smokers. From 2015 when ITGB acquired the KOOL brand through the present, ITGB has spent several million dollars per year advertising the KOOL Marks. (FAC, ¶15).

**Dilution Factor 2 - Extent of Sales.** From 2015 when ITGB acquired the KOOL Marks through the present, ITGB has sold over 1 billion packs of KOOL cigarettes. Sales have steadily increased from 2015 through the present. (FAC, ¶14).

**Dilution Factor 3 - Actual Recognition.** The adult consuming public, and the public at large, widely recognize the KOOL brand. In 2015, the United States District Court for the Middle District of North Carolina found that "[a]s a result of more than eight decades of continuous use and promotion of the KOOL Marks, [the] KOOL Marks have acquired a high degree of recognition, and distinctiveness throughout the United States as symbols of quality tobacco products. The public is uniquely aware of the KOOL Marks and identifies those marks with [ITGB's predecessor]." (FAC, ¶83, Exhibit 9). Other Courts have also held that tobacco products, even though marketed to adult consumers, can reach the level of fame necessary for a dilution claim. *See e.g. Lorillard Tobacco Co. v. California Imports, LLC*, 886 F.Supp.2d 529 (E.D Va. 2012) (use of plaintiff's tobacco mark on a "spice" smoking product containing synthetic marijuana constituted dilution by tarnishment).

**Dilution Factor 4 - Registration.** The federal registrations of the KOOL Marks issued in 1949, 1963, 1999, and 2002. These registrations are incontestable. Two of these registrations are for the interlocking "OO"s by themselves, as standalone marks. (FAC, ¶¶16-17, Exhibit 2).

The cases cited by Defendant in support of its Motion to Dismiss are procedurally and factually distinguishable. Defendant's reliance on *Avery Dennison*

*Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999) is misplaced. *Avery* is not a pleadings case, but rather, a summary judgment case determining the merits of Plaintiff's dilution claim. Defendant also relies on *MGA Entm't, Inc. v. Dynacraft BSC, Inc.,* No. 2:17-cv-08222-ODW-KS, 2018 WL 2448123, at *6, but in that case MGA was granted leave to amend to add that the trade dress at issue was known among the "general public" *MGA,* 2018 WL 2448123, at *6. ITGB has already pleaded that the KOOL brand is widely recognized by the adult consuming public and the public at large. (FAC ¶¶ 20, 22).  The decision in *Nissan Motor Co. v. Nissan Computer Corp.* is also a summary judgment holding, not a pleading case, and it only concerned a narrow issue related to dilution. 378 F.3d 1002, 1015 (9th Cir. 2004). In *Global Apogee v. Sugarfina Inc*, the plaintiff did not plead facts showing its popularity and recognition among the public and the complaint allegations were a mere recitation of the claim elements. 2018 U.S. Dist. LEXIS 175420, at *9 (C.D. Cal. Oct. 10, 2018).  Similarly, the allegations in *Parts.com, LLC v. Yahoo! Inc.* were "bare bones" and found lacking by the court. 996 F. Supp. 2d 933, 940 (S.D. Cal. 2013).  As demonstrated above, ITGB has done far more in the FAC to properly allege the fame of its interlocking OO's mark.  Defendant's citation to *Color Me Mine Enters., Inc. v. Southern States Marketing Inc.*, an unpublished opinion, is also distinguishable at least because the mark at issue had far less notoriety, generated only a fraction of the sales, and was marketed on a much lower scale compared with ITGB's asserted marks. 2012 U.S. Dist. LEXIS 196472, at *2 (C.D. Cal. May 18, 2012).

**B.   Third Party Usage of "Interlocking Rings" Is Irrelevant**

Defendant points to several brands that use "interlocking rings" in an attempt to deflect from its infringing and diluting use of KOOL's interlocking "OO"s, and claim that it is a common graphic design element. While a cursory glance at the logos Defendant points to demonstrates this argument has no merit, it is ultimately an argument on the merits that is both irrelevant and premature at this stage in the

litigation.

### C. ITGB Has Sufficiently Pled that the KOOL Marks are Likely to be Diluted by the Bloom Marks

Finally, in a last-ditch effort to attack ITGB's FAC, Defendant implausibly argues that the KOOL Marks and Bloom Marks are too dissimilar to cause dilution because of color differences in the marks. However, in Paragraph 26 of the FAC, and as shown below, ITGB clearly alleges that Defendant uses the Bloom Marks in solid colors in advertising, product and merchandising. This use is nearly identical to ITGB's use of the interlocking "OO"s.

| ITGB'S USE OF KOOL MARKS | DEFENDANT'S USE OF BLOOM MARKS |
| --- | --- |

In any case, to satisfy this element, ITGB need only allege that Defendant's use of the Bloom Marks is likely to impair the distinctiveness of ITGB's famous mark. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1172 (9th Cir. 2011) (for a dilution claim, a plaintiff need not establish that the junior mark is identical, nearly identical or substantially similar to the senior mark); *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 969-70 (N.D. Cal. 2015).

//
//

## V. CONCLUSION

For all the reasons ITGB set forth in its Opposition, the Motion should be denied. If the Court is inclined to grant the Motion, ITGB respectfully requests leave to amend.

Dated: April 26, 2021

DYKEMA GOSSETT LLP

By: */s/ Abirami Gnanadesigan*
Jon D. Cantor
Abirami Gnanadesigan

Attorneys for Plaintiff
ITG BRANDS. LLC