**O**

## United States District Court
## Central District of California

ITG BRANDS, LLC,

               Plaintiff,

    v.

CAPNA INTELLECTUAL,

               Defendant.

Case № 2:21-cv-00818-ODW (PVCx)

**ORDER DENYING MOTION TO DISMISS DILUTION CLAIM [22]**

### I.    INTRODUCTION

Defendant Capna Intellectual moves to dismiss the third cause of action, trademark dilution, from Plaintiff ITG Brands, LLC's First Amended Complaint ("FAC"). (Mot. to Dismiss Dilution Claim ("Motion" or "Mot."), ECF No. 22.) The matter is fully briefed. (*See* Opp'n, ECF No. 32; Reply, ECF No. 36.) For the reasons discussed below, the Motion is **DENIED**.[1]

### II.    BACKGROUND[2]

ITGB is the third-largest tobacco company in the United States, and it sells cigarettes under the brand "KOOL." (FAC ¶ 8.) ITGB owns U.S. Trademark

---

[1] The Court deems the Motion appropriate for decision without oral argument and hereby **VACATES** the hearing set therefor. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] For purposes of this Rule 12 Motion, the Court takes all of ITGB's well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Registration Nos. 508,538, 747,482, and 2,218,589 (together, the "KOOL Marks"), as well as U.S. Trademark Registration Nos. 2,578,658, and 2,617,994 (together, the "KOOL OOs"), for use in connection with cigarettes:

| Registration No. | Mark |
|---|---|
| 508,538 (stylized word) | KOOL |
| 747,482 (word mark) | KOOL |
| 2,218,589 (stylized word) | KOOL |
| 2,578,658 (logo) | OO |
| 2,617,994 (logo) | OO |

(*Id.* ¶ 16.)  ITGB alleges that the interlocking OOs in the KOOL logo symbolize the "fusion of tobacco and menthol" and are "a central part of the KOOL Marks."  (*Id.* ¶¶ 10–11.)

Since ITGB acquired the KOOL Marks and the KOOL OOs in 2015, it has spent millions of dollars per year advertising the marks, and it has sold over a billion packs of KOOL cigarettes in total, with sales steadily increasing.  (*Id.* ¶¶ 14–15.) ITGB alleges that the KOOL Marks and KOOL OOs are widely recognized by the consuming public as source-identifying for KOOL cigarettes, and that its marks obtained fame before Capna began its alleged conduct.  (*Id.* ¶¶ 21–22.)

Capna sells cannabis goods using the following marks, referred to in this Order respectively as the "BLOOM Mark" and "BLOOM OOs":

   

(*Id.* ¶ 24.)

ITGB alleges that the goodwill in the KOOL Marks and KOOL OOs is tarnished by Capna's use of the BLOOM Mark and BLOOM OOs.  For instance, some of Capna's products contain more than 0.3% tetrahydrocannabinol ("THC"), which makes them illegal under federal law.  (*Id.* ¶¶ 28–29.)  Also, in July 2018, Capna voluntarily recalled some of its products because they were found to contain the pesticide myclobutanil, which poses health risks and violates standards set by the California Bureau of Cannabis Control ("BCC").  (*Id.* ¶ 32.)  In general, ITGB alleges that the cannabis industry lacks regulation and that the FDA has not evaluated "the dangerous side effects or other safety concerns" associated with using cannabis products.  (*Id.* ¶¶ 28–31.)

Capna also makes smoking products that are not illegal under federal law.  On February 7, 2016, Capna filed U.S. Trademark App. No. 86/900,003 for registration of the BLOOM Mark, for use in connection with "cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes."  (*Id.* ¶ 34.)  And on September 12, 2019, Capna filed U.S. Trademark App. Nos. 88/614,465 and 88/614,491, for registrations of the BLOOM Mark and BLOOM OOs, respectively, for use in connection with "[e]lectronic cigarettes and oral vaporizers for smokers for use with cannabis oil extracts containing CBD derived from hemp containing no more than 0.3 percent THC . . . ; [e]lectronic cigarettes pre-filled with cannabis oil . . . containing no more than 0.3 percent THC . . . ; [and c]artridges pre-filled with cannabis oil extracts . . . containing no more than 0.3 percent THC."  (*Id.* ¶ 35.)

On December 3, 2020, ITGB sent Capna a cease and desist letter that "was expressly limited to [Capna's] use of the interlocking 'OO's, which are central to the KOOL Marks, and not directed to [Capna's] use of the mark BLOOM per se."  (*Id.* ¶ 37.)  The letter was apparently unsuccessful, as ITGB filed this action a couple months later on January 28, 2021.  (*See* Compl., ECF No. 1.)  Capna moved to dismiss the initial Complaint.  (Mot. Dismiss Compl., ECF No. 16.)  ITGB then filed the FAC, alleging five causes of action for: (1) trademark infringement under

15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) violation of California Business and Professions Code sections 17200, *et seq.* ("UCL"); and (5) declaratory judgment of non-registrability pursuant to 28 U.S.C. §§ 2201–2202, (*see* FAC ¶¶ 51–98).  Now, Capna moves to dismiss the third cause of action for trademark dilution.  (*See* Mot.)

### III.        LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  But factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Testing the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee*, 250 F.3d at 679.  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A court dismissing a complaint should provide leave to amend if the complaint could be saved by amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires.").  Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility."

*Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  "A party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (brackets omitted) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

## IV.      DISCUSSION

Capna moves to dismiss only the dilution claim.  "Dilution refers to the whittling away of the value of a trademark when it's used to identify different products." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (internal quotation marks omitted).  To prevail on a claim of trademark dilution, a trademark owner must show that (1) the mark is famous; (2) the defendant is making a commercial use of a mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is "likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1); *see Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1169 (9th Cir. 2011).

Here, Capna argues that (1) the KOOL OOs cannot be diluted because they are not famous, and (2) the KOOL Marks are not likely to be diluted by use of the BLOOM Mark or the BLOOM OOs because the parties' marks are not sufficiently similar.  (*See* Mot.)  The Court addresses these issues in turn.

## A.      Fame of the KOOL OOs

First, Capna argues that even if the KOOL Marks are famous, the KOOL OOs on their own are not famous.  (Mot. 3–8.)  Capna notes that ITGB never uses the KOOL OOs in isolation, and although prior courts may have found that the KOOL Marks are famous, those cases considered the fame of the KOOL Marks, not the

KOOL OOs in isolation.  (*Id.* at 4.)  Because the KOOL OOs are not famous on their own, Capna contends, they cannot be diluted.

For purposes of a dilution claim, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A); *see Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870 (9th Cir. 2020).  "Niche fame," or in other words, "fame within only a limited geographic area or a specialized market segment," is not enough to make a claim for protection against dilution.  *See Blumenthal*, 963 F.3d at 870 (internal quotation marks omitted).  In determining whether a mark is famous, courts "may consider all relevant factors," including:

> (i)     The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii)    The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii)   The extent of actual recognition of the mark.
>
> (iv)   Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).  "Whether a mark is famous under the [Trademark Dilution Revision Act] is a factual question . . . ."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).

Here, ITGB maintains that its pleadings are sufficient and that Capna is improperly arguing the merits of fame at the pleading stage.  The Court agrees. Although the FAC certainly leaves some questions unanswered, ITGB alleges that it has used *both* the KOOL Marks and the KOOL OOs on its packaging since 2015, during which time it sold over a billion packs of KOOL cigarettes and spent several millions of dollars per year in advertising both types of marks.  (FAC ¶¶ 14–15.) ITGB alleges that both the KOOL Marks and the KOOL OOs are widely recognized by the general consuming public as source identifying for KOOL cigarettes, and that

the KOOL OOs are registered on the principal register.  (*Id.* ¶¶ 21–22.)  Drawing all inferences in favor of ITGB, these allegations set out a plausible claim that the KOOL OOs are famous.  *See* 15 U.S.C. § 1125(c)(2)(A).

To be sure, Capna raises an interesting argument—ITGB groups together the KOOL Marks and KOOL OOs in the FAC as if they share the same characteristics, when they do not.  (Mot. 3.)  Indeed, it may turn out that the KOOL Marks are famous while the KOOL OOs are not.  Regardless, the issue with Capna's Motion is that it challenges the veracity of ITGB's pleadings by raising factual doubts, e.g., how much of the alleged advertising expenditures, sales numbers, and widespread recognition are attributable to the KOOL OOs as opposed to the KOOL Marks?  These questions will need to be answered, but not necessarily at the pleading stage.  Taking all factual allegations as true, ITGB adequately alleges that the KOOL OOs are famous.

**B.    Likelihood of Dilution of the KOOL Marks**

Next, Capna argues that the KOOL Marks are not likely to be diluted by the BLOOM Mark because the KOOL Marks and BLOOM Mark are "patently dissimilar."  (Mot. 9.)  Specifically, Capna argues that the words KOOL and BLOOM are entirely different words, and that ITGB uses green and blue packaging while Capna uses red packaging.  (*Id.*)

"Whether a defendant's mark creates a likelihood of dilution is a factual question."  *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010).  "'Dilution by blurring' is association arising from the similarity between a mark . . . and a famous mark that *impairs the distinctiveness* of the famous mark."  15 U.S.C. § 1125(c)(2)(B) (emphasis added).  "'Dilution by tarnishment' is association arising from the similarity between a mark . . . and a famous mark that *harms the reputation* of the famous mark."  *Id.* § 1125(c)(2)(C) (emphasis added).

Here, although likelihood of dilution is a factual question, Capna argues that the KOOL Marks and the BLOOM Mark are so dissimilar that any allegation of likelihood of dilution is implausible.  (Mot. 8–9.)  The Court disagrees.  Even though

KOOL and BLOOM are obviously different words, and ITGB may use green and blue packaging while Capna uses red packaging, those elements do not provide the sole bases for ITGB's claim.  Rather, ITGB takes issue with Capna's use of interlocking OOs within and alongside the name BLOOM, and with how similar the BLOOM OOs and KOOL OOs appear while being used in connection with related goods.  (*See, e.g.*, FAC ¶ 26.)  As ITGB and Capna both sell smoking products, it is plausible that consumers might mistakenly believe that KOOL cigarettes and BLOOM cannabis products originate from the same source based on the shared use of nearly identical interlocking OOs in the middle of each brand's respective logos.  *See J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462-63 (Fed. Cir. 1991) ("A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates . . . the common characteristic of the family, with the trademark owner.").  Thus, ITGB adequately alleges a similarity between the KOOL Marks and the BLOOM Mark that is sufficient to maintain a claim for dilution.

## V.    CONCLUSION

In summary, Capna fails to raise valid grounds for dismissing ITGB's dilution claim.  Accordingly, Capna's Motion to Dismiss is **DENIED**.  (ECF No. 22.)  Capna shall file its answer to the FAC pursuant to Rule 12(a)(4)(A).

**IT IS SO ORDERED.**

June 3, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

8